**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BARRY LAUGHMAN,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 1:05-CV-1033** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| **Defendant.** | : | |

**MEMORANDUM AND ORDER**

Before the Court are motions to dismiss filed by the Commonwealth of Pennsylvania,

Adams County, Adams County District Attorney's Office, and Pennsylvania State Police

Commissioners Walp, Hazen, and Evanko.  (Doc. Nos. 5, 14, 17, 21.)  The motions have been

fully briefed and the matter is ripe for disposition.  For the reasons discussed below, the motions

will be granted.

**I.     Background[1]**

This action arises out of the events surrounding the investigation and trial of Plaintiff,

Barry Laughman, for the 1987 rape and murder of Edna Laughman.  On August 13, 1987,

eighty-five year old Edna Laughman was found raped and murdered in her home in Oxford

Township, Adams County, Pennsylvania.  A neighbor, Royce Emerson, told the State Police that

he had seen a stranger walking behind his home on the morning of August 13, 1987.  Emerson

reported that he saw the stranger walk off in the direction of Edna Laughman's home.  He added

---

[1]   For purposes of evaluating the pending motions to dismiss, the Court accepts as true
all well-pleaded allegations contained in the Complaint (Doc. No. 1).

that he  personally knew Barry Laughman, and that Plaintiff was not the man he encountered that

morning.  Based on Emerson's statements, the State Police drew a sketch of the stranger and

began stopping cars on Route 94 asking motorists if they had seen him.  The State Police never

identified the man described by Emerson.

On August 27, 1987, Pennsylvania State Police Troopers Holtz and Blevins questioned

Plaintiff regarding Edna Laughman's rape and murder.  Under questioning, Plaintiff said that he

had been drinking beer with his brother the evening before the victim was found and that he

could not go to bed because another brother was in the room they shared with the brother's

girlfriend.  Plaintiff told the police that he fell asleep on the couch that evening and did not get

up until his father awoke him the next morning to go to work.

On September 8, 1987, Troopers Holtz and Blevins requested that Plaintiff and his father

return for more questioning.  When Plaintiff and his father arrived, Trooper Holtz took Plaintiff

into an interview room alone.  At the time of this second questioning, Plaintiff was twenty-four

years old with an IQ of 69-71, which was lower than 97.5 % of the population.  He was

classified as "a moron" under then existing mental health classifications.[2]

After approximately an hour of interrogation, Troopers Holtz and Blevins claim Plaintiff

confessed to the rape and murder.  Although Trooper Holtz had a tape recorder, Plaintiff's

confession was not recorded.   Rather, Trooper Holtz is heard reading the confession statement

to Plaintiff and asking whether it is correct.  Plaintiff's voice is only heard on the tape saying

"yes."

---

[2]  Under current mental health classifications, Plaintiff would be considered mildly
retarded.

Pursuant to a criminal complaint and affidavit of probable cause executed by Trooper Blevins, on September 8, 1987, Plaintiff was arrested and charged with first-degree murder, second-degree murder, third-degree murder, robbery and burglary. Janice Roadcap, a chemist for the Pennsylvania State Police, tested evidence found at the scene of the crime and concluded that the assailant was a person of type-A blood. After his arrest, Plaintiff's blood was tested and Roadcap determined that he was a type-B secretor. Upon learning of the incongruous lab results, Roadcap added writing in the margins to her original lab notes indicating that swabs taken of the semen "were moist when placed in vials. Breakdown of B antigens could have occurred." Roadcap returned the evidence back to Troopers Holtz and Blevins, who stored it in an evidence locker for eight months where it degraded and was rendered useless for further testing by the defense.

Plaintiff was convicted of first-degree murder, rape, robbery and burglary. On August 15, 1990, he was sentenced to life in prison. Plaintiff filed a timely appeal to the Superior Court of Pennsylvania. Judgment of the sentence was affirmed by the Superior Court on July 12, 1991. A timely petition for allowance of appeal was filed with the Supreme Court of Pennsylvania and denied on March 26, 1992.

Between March of 1992 and May of 2003, Plaintiff filed numerous unsuccessful Post-conviction Relief Act ("PCRA") petitions.[3] On June 18, 2003, new attorneys for Plaintiff filed a

---

[3] In October of 1993, Plaintiff filed a pro se PCRA petition. His public defender was unable to have semen samples taken from the victim's body tested and no DNA evidence was introduced. In 1994, the forensic materials which were unable to be tested were turned over to Professor Stoneking at Pennsylvania State University who was utilizing state of the art techniques in DNA testing. Stoneking was able to test the samples, but needed samples from Plaintiff in order to draw meaningful conclusions. Stoneking requested the samples from Plaintiff's PCRA attorney, but never received a response.

motion for post-conviction DNA testing pursuant to 42 Pa.C.S. § 9543.1.  On June 20, 2003, the

motion was granted and the DNA evidence was ordered to be tested and compared to samples

taken from Plaintiff.  In a report dated November 5, 2003, the DNA analyst concluded that,

"Barry Laughman is excluded as a source of the DNA obtained from this sample."

On November 12, 2003, Plaintiff filed a PCRA petition.  Following a bail hearing on

November 21, 2003, Plaintiff was ordered released from prison after sixteen years of

imprisonment.  Without opposition from the Commonwealth, on August 26, 2004, Plaintiff was

granted a new trial, the charges against him were dismissed, and his immediate discharge was

ordered.

Plaintiff subsequently brought this civil action pursuant to the Civil Rights Act, 42

U.S.C. § 1983, the Pennsylvania Constitution, and state law for damages arising out of alleged

malicious prosecution, unlawful incarceration, and cruel and unusual punishment.  Plaintiff also

seeks relief under state law claims of fraud, false imprisonment, and conspiracy.  The moving

Defendants[4] have all filed motions to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6),

arguing that he has failed to state a claim upon which relief can be granted.[5]

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is

properly granted when, taking all factual allegations and inferences as true, the moving party is

---

[4]  Defendants Commonwealth of Pennsylvania, Adams County, Adams County District
Attorney's Office, and former Pennsylvania State Police Commissioners Walp, Hazen, and
Evanko.

[5]  Defendants Holtz, Belvins, and Roadcap have filed an answer.  Defendant Estate of
Sharpe has not responded in any manner to Plaintiff's Complaint.

4

entitled to judgment as a matter of law.  <u>Markowitz v. Northeast Land Co.</u>, 906 F.2d 100, 103

(3d Cir. 1990).  When considering a motion to dismiss, the court accepts as true all factual

allegations contained in the complaint and views them in the light most favorable to the plaintiff.

<u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383, 388 (3d Cir. 2002).  The plaintiff is required

to "set forth sufficient information to outline the elements of his claim or to permit inferences to

be drawn that those elements exist."  <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993)

(citations omitted).  A court should grant a motion to dismiss only if it appears the plaintiff can

prove no set of facts in support of his claim that would entitle him to relief.  <u>Wisniewski v.</u>

<u>Johns-Manville Corp.</u>, 759 F.2d 271, 273 (3d Cir. 1985) (citations omitted).  The burden is on

the moving party to show that no claim has been stated.  <u>Johnsrud v. Carter</u>, 620 F.2d 29, 33 (3d

Cir. 1980).

**III.    Discussion**

    **A.    Claims against the Commonwealth**

The Commonwealth Defendant argues that because it is not a person under 42 U.S.C.

§ 1983, the federal claim against it must be dismissed.  The Court agrees.  Section 1983 provides

a cause of action against any "person who, under color of any statute, ordinance, regulation,

custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be

subjected" any person to the deprivation of any right protected by federal law or the United

States Constitution.  42 U.S.C. § 1983.  The Supreme Court has held that a state is not a person

under

§ 1983.  <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989).

Moreover, the Eleventh Amendment to the United States Constitution is consistently

interpreted to preclude suits against a state in federal court by citizens of that state or other states. See College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd., 527 U.S. 666, 669 (1999); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 98 (1984); Edelman v. Jordan, 415 U.S. 651, 662-63 (1974). Although a state may consent to suit against it in federal court thereby waiving its immunity, Pennsylvania has not done so. Pennhurst, 465 U.S. at 98. For the foregoing reasons, the Commonwealth's motion to dismiss Plaintiff's § 1983 claims will be granted.

The Commonwealth also seeks dismissal of the state law claims against it on the basis of sovereign immunity. As the sovereign, the Commonwealth is immune from all suits except in those cases where the General Assembly of Pennsylvania has specifically waived the immunity. See 1 Pa.C.S. § 2310. The General Assembly of Pennsylvania has waived immunity in only nine areas. See 42 Pa.C.S. § 8522. If a claim is not included within the nine categories enumerated in § 8522, it is barred by sovereign immunity. See LaFranki v. Micklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992); Faust v. Commonwealth Dep't of Revenue, 592 A.2d 835, 839 (Pa. Cmwlth. 1991). Plaintiff's state law claims against the Commonwealth do not fall within one of the nine enumerated categories under § 8522. Accordingly, the Commonwealth's motion to dismiss Plaintiff's state law claims will be granted.[6]

### B. Section 1983 Claim Against Adams County Defendants

Plaintiff advances § 1983 claims against Adams County and the Adams County District Attorney's Office on the theory that the Adams County Defendants failed to train and "lacked

---

[6] Although Plaintiff filed a brief in opposition to the Commonwealth's motions, Plaintiff did not counter any of the Commonwealth's arguments. (Doc. No. 11.)

sufficient safeguards to prevent their agents from altering evidence, from concealing exculpatory evidence, [and] from permitting and causing [the evidence] to degrade . . . ." (Doc. No. 1, ¶ 132.)  Plaintiff alleges that the District Attorney's Office had supervisory control over exculpatory evidence "stored in an evidence locker at the Gettysburg [Pennsylvania State Police] barracks for 8 months after testing where it proceeded to degrade" and is therefore liable for the inadequate manner in which the evidence was stored.  (Doc. No. 33 at 10.)  Plaintiff argues that Adams County is liable for the above failure to train and supervise, because the District Attorney is a policymaker of Adams County.  (Doc. No. 32 at 3.)

      1.    <u>Municipal Liability Standard</u>

      In <u>Monell v. Department of Social Services of New York</u>, 436 U.S. 658, 690-91 (1978), the Supreme Court concluded that Congress intended § 1983 to apply to municipalities and other local government units, but that a municipality cannot be held liable for the constitutional torts of its employees based on a <u>respondeat</u> <u>superior</u> theory.  <u>Monell</u>, 436 U.S. at 690-91.  The Third Circuit recently summed up subsequent <u>Monell</u> jurisprudence in this way:

> [A] municipality may only be liable for the torts of its employees in one of three ways:  First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes.

<u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir. 2005) (citations omitted).  Municipalities are thus liable under <u>Monell</u> only when fault and causation have been established.  Accordingly, the Supreme Court has held that a "plaintiff must also demonstrate that, through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged."  <u>Bd. of County</u>

Comm'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original)

(quoting Monell, 436 U.S., at 694).  Inadequate police training may serve as the basis for § 1983

liability only when "a municipality's failure to train its employees in relevant respect evidences a

'deliberate indifference' to the rights of its inhabitants" such that the failure could be "properly

thought of as a [municipality] 'policy or custom'"  City of Canton v. Harris, 489 U.S. 378, 389

(1989).

      2.    Section 1983 Claims against the Adams County District Attorney's Office

      Plaintiff urges this Court to impose Monell liability on the Adams County District

Attorney's Office based on an alleged failure to train or supervise Pennsylvania State Police

Trooper Holz, Trooper Blevins, and Chemist Roadcap. (Doc. No. 33 at 6, 9-10.)  Plaintiff argues

that the Adams County District Attorney's Office is liable under the third prong of municipal

liability in that the District Attorney failed to train or supervise Trooper Holtz, Trooper Blevins,

and Chemist Roadcap, thereby rendering their actions official for liability purposes.  (Doc. No.

33 at 6.)  Although Plaintiff refers to Holz, Blevins, and Roadcap as "agents" of Adams County

and the Adams County District Attorney's Office, Plaintiff specifically alleges that at all times

relevant, the individuals were employed by the Pennsylvania State Police.  (Doc. No. 1 ¶¶ 7-9;

97-107; 132-33.)  The District Attorney's Office argues that it cannot be held liable for any of

the alleged unconstitutional acts committed by Pennsylvania State Police employees, over whom

they have no control and no duty to train.[7]  (Doc. No. 31 at 10-11.)

---

      [7] The Court notes that in Reitz v. County of Bucks, 125 F.3d 139 (3d Cir. 1997), the
Third Circuit addressed the issue of whether a county district attorney's office is a separate legal
entity for purposes of section 1983.  Reitz, 125 F.3d at 144.  In Reitz, the Third Circuit
recognized that Pennsylvania law extends to counties the legal capacity to sue or be sued, but
affirmed the District Court's finding that the Bucks County District Attorney's Office is not a

The Pennsylvania State Police is a state-created, state-operated law enforcement agency within the executive branch of the Commonwealth.  71 Pa. Stat. Ann. § 61 (2005).  Under Pennsylvania law, the Pennsylvania State Police operate at the direction of the Governor and Attorney General.[8]  Plaintiff cites to no authority, and the Court finds none, in support of its claim that a county prosecutor has supervisory control over Pennsylvania State Police employees.[9]  (Doc. No. 33, 9-10.)  Similarly, Plaintiff proffers no support for his claim that the Adams County District Attorney's Office has a duty and the ability to train Pennsylvania State

---

legal entity for purposes of § 1983 liability.  Reitz, 125 F.3d at 148.  See also Briggs v. Moore, 2005 U.S. Dist. LEXIS 18593, * 12 (D.N.J. 2005) ("A county district attorney's office is not a government entity which can be sued under § 1983 separate from the individual who is the county prosecutor or the governmental entity that the county prosecutor serves"); Dickerson v. Montgomery County DA's Office, 2004 U.S. Dist. LEXIS 25033, *6 (E.D. Pa. 2004) (finding that "Montgomery County District Attorney's Office argues that it is not a 'person' to be sued under 42 U.S.C. § 1983 and that there is no authority under Pennsylvania law permitting a department or agency of county government to be sued for money damages as a separate legal entity).  However, Defendant Adams County District Attorney's Office does not argue this point.

[8]  The Pennsylvania State Police have the power and duty:

> (b) To assist the Governor in the administration and enforcement of the laws of the Commonwealth, in such manner, at such times, and in such places, as the Governor may from time to time request [and] (c) With the approval of the Governor, to assist any administrative department, board, or commission, of the State Government, to enforce the laws applicable or appertaining to such department, board, or commission, or any organization thereof . . . .

71 Pa. Stat. Ann. § 250 (2005).  The Pennsylvania Governor appoints the Commissioner, the head and executive officer of the Pennsylvania State Police, who also sits on the Governor's cabinet.  71 Pa. Stat. Ann. §§ 61, 251, 784.7 (2005).  The Attorney General is the chief law enforcement officer of the Commonwealth and the Pennsylvania State Police must "furnish such services as the Attorney General shall request."  71 P.S. § 732-206 (2005).

[9] The Pennsylvania State Police is only instructed to cooperate "whenever possible . . . with counties and municipalities in the detection of crime, the apprehension of criminals, and the preservation of law and order throughout the State . . . ."  71 Pa. Stat. Ann. §§ 250, 732-206.

Police personnel.  (Id.)  Monell extends liability to a municipality under certain limited circumstances "for torts committed by it's employees", not individuals tangentially associated with the municipality.  McGreevy, 413 F.3d at 367.  Assuming that the District Attorney's Office knew all it is alleged to have known with respect to the conduct of the individual defendants, it nevertheless had no direct supervisory authority over the State Police.  Because the Adams County District Attorney's Office had no such authority, a § 1983 suit based on its alleged failure to supervise the Pennsylvania State Police employees is untenable.  See Wilkinson v. Ellis, 484 F. Supp. 1072, 1087 (E.D. Pa. 1980) (dismissing the § 1983 failure to supervise claim against Philadelphia District Attorney after finding he had no supervisory control over Philadelphia Police).

     Plaintiff also urges this Court to impose Monell liability on the Adams County District Attorney's Office based on the State Police's failure to properly store forensic evidence at its Gettysburg barracks.  (Doc. No. 33 at 9-10.)  The Complaint alleges that the State Police collected the forensic evidence at issue in the course of its investigation, tested the samples, and then improperly stored evidence at a Pennsylvania State Police barracks, months before the Adams County District Attorney initiated the criminal case.  (Doc. No. 33 at 3.)  Plaintiff contends that because a prosecutor has a duty under Brady v. Maryland, 373 U.S. 83 (1963), to disclose exculpatory evidence to the defense, "the prosecutor is the ultimate custodian of evidence to be adduced against defendant at trial," and therefore liable for the destruction of evidence by individuals not directly under its supervision.[10]  (Doc. No. 33 at 10.)  In Brady, the

---

     [10] Plaintiff further asserts without citation that a county prosecutor may order a state police office to maintain evidence in a certain manner.  (Id.)  The Court finds no support for this broad legal assertion.

Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87.  However, it is well established that a prosecutor's failure to comply with Brady is a prosecutorial act entitled to absolute immunity.  See e.g. Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police, 411 F.3d 427, 444 (3d Cir. 2005) (finding that the prosecutors would have been immune from suit for Brady violation had they been so named); Gibbs v. Deckers, 234 F. Supp. 2d 458, 462-63 (E.D. Pa. 2002) (holding that concealment of exculpatory evidence is protected by prosecutorial immunity); Roberts v. Toal, 1995 U.S. Dist. LEXIS 1492, at *8-*9 (E.D. Pa. 1995) (holding that absolute immunity protects prosecutor from decision not to release rape kit for DNA testing).  Prosecutors are absolutely immune from liability when exercising their prosecutorial duties in presenting the State's case.  Imbler v. Pachtman, 424 U.S. 409, 430-31 (1975) (Prosecutors are immune from suit under section 1983 for "initiating and pursuing a criminal prosecution").  The "handling of evidence is clearly within the sweep of 'initiating and presenting the State's case', and the prosecutor is immune from section 1983 liability for such decisions."  Henderson v. Fisher, 631 F.2d 1115, 1120 (3d Cir 1980) (quoting Imbler, 424 U.S. at 431).  It is when prosecutors are performing their administrative or investigative duties for the county that qualified immunity applies.  Donahue v. Gavin, 280 F.3d 371, 377 (3d Cir. 2002).

Unlike the cases relied upon by Plaintiff, the facts alleged here do not constitute a failure in administering personnel on the municipal level.  See Carter v. City of Phila., 181 F.3d 339 (3d Cir. 1999) (failure to supervise assistant district attorneys); Henderson v. Fisher, 631 F.2d 1115

(3d Cir 1980) (failure to prevent University of Pittsburgh campus police officer from destroying evidence)[11]; Thomas v. Pennsylvania, 1986 WL 1976 * 1 (E.D. Pa. 1986) (failure to train municipal police); Wilkinson v. Ellis, 484 F. Supp. at 1078 (failure to prevent assistant district attorney from destroying evidence).  The deterioration of the forensic samples in the case sub judice allegedly occurred months before the District Attorney initiated the criminal case and while in the possession of the State Police.  The only allegations against employees of the Adams County District Attorney's office is that the District Attorney intentionally failed to turn over exculpatory evidence to Plaintiff's defense counsel during trial, in violation of Brady. (Doc. No. 1 ¶ 136.)  However, prosecutors enjoy absolute immunity from suit for Brady decisions made while preparing and presenting the state's case.  Gibson, 411 F.3d at 444. Plaintiff has failed to allege any facts to support Monell liability upon the District Attorney's Office.  Accordingly, Plaintiff's § 1983 claims against the Adams County District Attorney's Office must be dismissed.

      3.      Section 1983 Claims against Adams County

Plaintiff urges this Court to impose Monell liability on Adams County based upon two theories.  First, Plaintiff argues that the County is liable for the alleged failure of the District Attorney's Office to train or supervise Trooper Holz, Trooper Blevins, and Chemist Roadcap.

---

[11] Under Pennsylvania Law, campus police of the University of Pittsburgh are given the same powers and duties as the local municipal police, while on university grounds. Pennsylvania law enables campus police "[t]o exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police . . . in municipalities wherein said colleges, universities and community colleges are located" and to "arrest any person who shall . . . commit any other offense within . . . the grounds and buildings of all State colleges and universities . . . and carry the offender before the proper alderman, justice of the peace or magistrate and prefer charges against him under the laws of the Commonwealth."  71 Pa. Const. Stat. Ann. § 646 (2005).

(Doc. No. 33 at 6, 9-10.)  Second, Plaintiff asserts that the County is liable for the District

Attorney's failure to preserve exculpatory evidence under Brady.  (Id.)  Plaintiff makes both of

these claims under the second prong of municipal liability, arguing that the District Attorney had

policy making authority, rendering his behavior an official act of the County.

When a District Attorney is making prosecutorial decisions, he is serving in the role of a

state actor and the county where his office is located is not liable for his prosecutorial decisions.

Carter, 181 F.3d at 352.  It is only when a District Attorney is performing his administrative

functions that he is considered to be acting on behalf of the county.  Id.  For the reasons

discussed more fully above, the District Attorney's Office cannot be held liable for the alleged

unconstitutional actions of Trooper Holz, Trooper Blevins, and Chemist Roadcap, as it has no

duty or ability to supervise State Police employees.  Accordingly, Plaintiff's theory of Monell

liability against the County for the alleged failure of the District Attorney's Office to supervise

must fail.  Similarly, because the alleged Brady violation by the District Attorney falls within the

District Attorney's role as state actor presenting the State's case,  Adams County cannot be held

liable for this alleged unconstitutional act.[12]  Coleman v. Kaye, 87 F.3d 1491, 1499 (3d Cir.

1996) ("when enforcing their sworn duties to enforce the law . . . [county prosecutors] act as

agents of the State . . .").  Accordingly, Plaintiff's § 1983 claims against Adams County must be

dismissed.

**D.     Section 1983 Claims Against Commissioners Walp, Hazen, and Evanko**

---

[12] As Chief Judge Vanaskie noted in Williams v. Fedor, 69 F. Supp. 2d 649 (M.D. Pa. 1999), "Pennsylvania law does not confer upon the county's governing body, the county commissioners, law enforcement authority.  Nor does it impose upon the county commissioners the authority to direct the district attorney's prosecutorial decision."  Williams, 69 F. Supp. 2d at 658-63.

Plaintiff advances section 1983 claims against former Pennsylvania State Police Commissioners Walp, Hazen, and Evanko ("Commissioners") on two theories.  The first is that the Commissioners negligently supervised agents of the Pennsylvania State Police, causing Plaintiff to remain unjustly imprisoned.  The second is that the Commissioners "failed and/or refused to acknowledge the injustice of [Plaintiff's] arrest, prosecution and conviction . . . ." (Doc. No. 16 at 5 n1.)  Both theories of liability must fail.  Accepting as true all facts alleged by Plaintiff, there are no facts to support a finding of the personal involvement necessary to support a finding of liability for any of the named Commissioners.  No named Commissioner served as Commissioner for the Pennsylvania State Police during Plaintiff's arrest and prosecution in 1988.[13]  Even viewed in the light most favorable to Plaintiff, the Complaint fails to allege any acts that would support a finding that Defendants negligently supervised state police personnel who violated Plaintiff's rights, and are thus liable based on their individual personal involvement.  Evancho v. Fisher, 423 F.3d 347, 355 (3d Cir. 2005) (finding Plaintiff's civil rights claim insufficient in that it failed to allege that the Pennsylvania Attorney General had personal involvement or knowledge of Plaintiff's job transfer).  Plaintiff's theory that the failure of the individual Commissioners to right the wrongs done to Plaintiff during his years of incarceration also falls short.  There is no basis in law to hold the Commissioners, who collectively served from 1991 into 2003, liable under § 1983 for a prosecution that predates their tenure.  See Gibson, 411 F.3d at 446 (finding no constitutional duty to disclose potentially

---

[13]    The Complaint alleges that; Walp served as Commissioner of the Pennsylvania State Police from 1991 into 1995; Hazen served as Commissioner of the Pennsylvania State Police in 1995; and Evanko served as Commissioner of the Pennsylvania State Police from 1995 into 2003. (Doc. No. 1 at ¶¶ 11-13).

exculpatory evidence to a convicted criminal after the criminal proceedings had concluded);

Donahue, 280 F.3d at 380-81 (damages for post-conviction injuries are not within the purview of

malicious prosecution claim).   Accordingly, this Court will dismiss Plaintiff's § 1983 claims

alleged against Commissioners Walp, Hazen, and Evanko.

>        **E.        State Claims Against Adams County**

Adams County seeks dismissal of the state law claims against it on the ground that the

claims are barred by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §

8541, et seq. ("Tort Claims Act").   Plaintiff asserts that the state law claims against Adams

County are proper under an exception in the act for "personal property," 42 Pa.C.S.A. § 8542(b).

The Tort Claims Act provides local agencies with immunity for claims for monetary

damages except in cases involving eight specific types of tortious conduct.   See 42 Pa.C.S.A. §§

8541 and 8542(b).   The personal property exception to sovereign immunity under the Torts

Claim Act provides:

>        **(b) Care, custody or control of personal property.**- The care,
>        custody or control of personal property of others in the possession
>        or control of the local agency.   The only losses for which damages
>        shall be recoverable under this paragraph are those property losses
>        suffered with respect to the personal property in the possession or
>        control of the local agency.

42 Pa.C.S.A. § 8542(b)(2).   Here, Plaintiff alleges that the deterioration of the forensic evidence,

his "personal property," caused him injuries and damages to his person in the nature of being

unjustifiably confined to prison.   However, § 8542(b) only provides for damages which are those

"property losses suffered with respect to the personal property in the possession or control of the

local agency."   42 Pa.C.S.A. § 8542(b).   As such, even if this Court were to determine that the

forensic evidence was "personal property," Plaintiff cannot bring a state law claim against

Adams County under § 8542(b) because he has not alleged a property loss.  Since Plaintiff's

Complaint does not allege any of the Act's enumerated exceptions to the governmental immunity

enjoyed by Adams County, all state law claims against the County must be dismissed.

### F.    State Constitutional Claims

All moving Defendants[14] contend that monetary damages do not exist for a violation of

constitutional rights under the Pennsylvania Constitution.[15]  As the Pennsylvania Supreme Court

has not yet addressed the issue of whether a plaintiff may seek monetary damages for state

constitutional violations, this Court will decline to exercise supplemental jurisdiction over

Plaintiff's state constitutional claims pursuant to 28 U.S.C. § 1367(c)(1).[16]  Section 1367(c)(1)

states, "the district courts may decline to exercise supplemental jurisdiction over a claim . . . if

the claim raises a novel or complex issue of State law."  Numerous district courts have

recognized that the issue of whether an action for monetary damages for violations of the

Pennsylvania constitution is a "novel or complex issue of State law" and accordingly, have

declined to exercise supplemental jurisdiction.  See, Mitchell v. Street, No. 04-3213, 2005 U.S.

Dist. LEXIS 17156 at *16-18 (E.D. Pa. August 16, 2005) (dismissing state constitutional claims

---

[14] Defendants Commonwealth of Pennsylvania, Adams County, Adams County District Attorney's Office, and former Pennsylvania State Police Commissioners Walp, Hazen, and Evanko.

[15] See Doc. No. 6 at 6; Doc. No. 15 at 5; Doc. No. 26 at 9; Doc. No. 31 at 16.

[16] Recently, the Commonwealth Court of Pennsylvania ruled that there is "no separate cause of action for monetary damages for the use of excessive force in violation of Article I, Section 8 of the Pennsylvania Constitution." Jones v. City of Philadelphia, 2005 WL 3695389, *18 (Pa. Cmwlth. Jan. 25, 2006).

without prejudice in light of the unclear status of the law); <u>Millar v. Windsor Township,</u> No. 04-CV-2529, 2005 U.S. Dist. LEXIS 17433  at *12 (M.D. Pa. June 24, 2005) (stating that there is a "dearth of case law on the issue" and declining to exercise jurisdiction over the state constitutional claims because deference to the state appellate courts is appropriate); <u>Mulgrew v. Fumo,</u> No. 03-CV-5039, 2004 U.S. Dist. LEXIS 14654 at *7-8 (E.D. Pa. July 29, 2004) ("Due to this unsettled issue of law, as to whether such a direct right of action exists [for money damages for violations of the state constitution], we believe a state court is better equipped to determine the causes of action that may be derived from the Pennsylvania Constitution."); <u>see</u> <u>also</u> <u>Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.,</u> 140 F.3d 478, 487 (3d Cir. 1998) (affirming district court's decision to refrain from exercising supplemental jurisdiction over state constitutional claims that presented a complex issue of state law).

Therefore, this Court will decline to exercise supplemental jurisdiction over Plaintiff's state constitutional claims pursuant to § 1376(c)(1) and will dismiss Plaintiff's state constitutional claims without prejudice against Defendants Adams County District Attorney's Office, and former Pennsylvania State Police Commissioners Walp, Hazen, and Evanko.[17]

---

[17] Defendants Commonwealth of Pennsylvania and Adams County are immune from Plaintiff's state law claims for the reasons discussed in sections III(a) and III(d) of this opinion.

**IV.**     <u>Order</u>

    **AND NOW**, this 17th day of March, 2006, for the reasons discussed above, **IT IS**

**HEREBY ORDERED THAT** the pending motions to dismiss are disposed of as follows:

1.     The Commonwealth of Pennsylvania's motion to dismiss (Doc. No. 5) is **GRANTED**.

2.     Former Pennsylvania State Police Commissioners; Glenn A. Walp, James B. Hazen, and Paul J. Evanko's motion to dismiss (Doc. No. 14) is **GRANTED**.

3.     Adams County's motion to dismiss (Doc. No. 17) is **GRANTED**.

4.     Adams County District Attorney's Office's motion to dismiss (Doc. No. 21) is **GRANTED**.

5.     A telephone conference shall be held on March 29 2006, at 10:00 a..m.   Plaintiff's counsel shall initiate this conference call.  The telephone number of the Court is 717-221-3990.


                <u>   S/ Yvette Kane       </u>

                Yvette Kane

                United States District Judge